The next case is Marjorie Taylor Greene v. Secretary of State for the State of Georgia and the intervener, David Rowan. James Bopp is here for Greene, Charlene McGowan is here for the Secretary, and Brian Sells is here for the intervener, Rowan. And when you're ready, Mr. Bopp, you may proceed. Thank you, Mr. Bopp. Thank you, Mr. Bopp. Thank you, Mr. Bopp. May it please the Court, I'm James Bopp, Jr. representing Charlene McGowan. At this case, we're dealing with a very serious matter. The challenges have made a reckless and frivolous allegation smearing Representative Greene that she committed a serious federal crime and a serious constitutional offense, but we're not here to decide the merits or the factual basis for that claim. We are here instead to protect the right to vote. If Representative Greene has won the primary, by all accounts, will win the general election, and the right to vote is at stake. Secondly, democracy is at stake, the right of the voters to choose their leaders, not lawyers, judges, government, bureaucrats, except in the most experienced . . . Let me ask this question. If Representative Greene ultimately prevails in the parallel state proceedings, she ultimately prevails in the Georgia Supreme Court, how does she have an injury sufficient to give us a case in controversy? The case would be moved at that point, wouldn't it? We have actually parallel proceedings that don't even overlap. In federal court, we are making federal claims and constitutional and federal law claims. But you're asking us to stop the state court proceedings. No, we're asking you to instruct that if the procedures are unconstitutional, then those procedures are to be declared unconstitutional and anything that flows from those procedures . . . She's making an applied challenge to the . . . We're both making a facial in some instances and other instances as applied. Your Honor, the state court and the state administrative procedure completely refuses to address the federal claims that we are making in federal court. The ALJ is prohibited by state law from addressing any of the federal claims that we are making, including the ones challenging the challenge statute and application of Section 3. The state court judge refused to consider the counterclaims we made, raising the very issues we're raising here, and the state in that action said that no counterclaim . . . Your client won in state court. Well, no. That would be like the state of Georgia decides to reinstate a trial by combat, and then we sue after she wins by slaying her opponent and said, that procedure is unconstitutional. The state would say, you won. If she prevails, what's her injury? Her injury is that she has been subject to an unconstitutional procedure that stripped her these administrative procedures, stripped Representative Green of nearly all the protections of the civil rules of procedure and the rules of evidence. So you have a claim for damages? No, we want a declaration on the merits, but an injunction. Isn't your concern that because she's up for election every two years, that she could face a similar challenge, and so it would be capable of repetition but evading review? That would be correct. The Seventh Circuit, of course, dealt with that issue directly. How can that happen, though, if there's already been a finding of fact in the parallel state proceedings that she did not participate in the insurrection? So how could it come up again in two years when she's up for re-election? We judge the procedure based upon belief, that the whole procedure is triggered by belief. We say that's unconstitutional, and as a candidate... So there could be another, if she runs for re-election in two years, the state would have to decide again whether or not she participated in the insurrection? No, not under Section 3. There could be another challenge for some other claim that she is not qualified and be subject to the same procedure that is unconstitutional. We understand that there may be collateral estoppel, for instance, on Section 3, and that couldn't be re-litigated next time. But any other claim, as frivolous and reckless as this one, could be triggered by a mere belief. Fourth Circuit says if you're going to investigate or arrest somebody based on the exercise of the First Amendment, you have to have probable cause, not a belief that you might have done this. It isn't even sworn, as some states require. So you are thrust into this procedure that forces you right to trial without determining whether or not there's legal sufficiency of the complaint, without considering any constitutional defenses that you have to the claim. So you go right to trial on the mere belief, and being subject to a government investigation and the exercise of your First Amendment rights by based simply on a belief that you may have committed, that person may not, in this case, be qualified, violates the First Amendment. Let me ask you, if we're going to get into the merits, your argument that the state doesn't have the authority to determine whether or not she's qualified to run for office, only Congress has that authority? No, the Section 3 is a disqualify you from holding office. Of course, holding office begins on January 3rd when you raise your hand and get sworn in. And what we are saying is that under Section 3, you cannot determine that Congress at any time. You have to be in order for Congress to make that determination, you have to be elected first. The state can determine whether or not you're qualified to run for office. Congress can only determine whether or not you're qualified to serve. Congress can't determine whether or not you're qualified to run for office, can it? She is qualified under Section 3 to run for office because it's not a disqualification to run for office. Right. But you got to get elected first before Congress makes that determination. The question is, can the state determine that Representative Green cannot serve? And the answer is no, because Congress at any time could remove the disability if it existed up until she raised her hand on January 3rd. If we accept your argument then that only Congress can determine whether or not she's qualified to serve as a representative, does that mean that Yes, and of course you're referring to a different claim than the Section 3 claim, and that is Congress has the sole authority under Article 1, Section 5 to judge the qualifications. So Congress isn't bound by what the state of Georgia says. And they can do this sua sponte and in fact have in the past. There have been recounts, somebody in fact in our state recounts Republican won, Democrat, Congress recounted the votes a Democrat won. Okay. So regardless of whether or not you win in the state parallel proceedings, if she's elected, Congress can decide anew whether or not she's qualified to serve by making a determination as to whether or not she participated in the insurrection, because as you stated in your brief, only Congress can decide whether or not you're qualified to serve and not the state. But if she's removed before the general election, a substitute person will be placed in her stead and therefore she'll never present herself to Congress on whether or not she's qualified. That's how the state preempts Congress's authority, is they remove them before the general election and therefore the person never presents him or herself for being sworn in. That's the difference. It's not after the general election the state decides that you're not qualified to have to have been elected. It is whether or not you're qualified to be a candidate at this time to be a candidate. And your argument is that the state can't decide whether or not she's a candidate? As a candidate for Congress, that's correct. Congress can decide whether or not she's qualified to be a candidate for Congress? Yes, they can decide whether or not she's qualified. The point is, the Constitution has qualifications, some of which apply to running for office. Okay, my understanding is that Congress can decide whether she's qualified to serve if she has been elected. Am I wrong about that? No, that's correct. But the state is preempting the decision of Congress on whether or not she's disqualified to run for office. But can I ask you a question? If an individual decided to run for Congress and he or she resides in Georgia, but they are of the age of 21, under the Constitution, they're not qualified to serve as a member of Congress. So if they win, they have their application, they went to the Secretary of State, read their check, are you saying that the state could not say, we can't accept that because you don't meet the qualifications? Under Article I, Section 5, that is the ramification. And I, you know, it's obviously never occurred before because those things are simple determinations that are very straightforward, that don't involve a huge trial, hundreds of exhibits, all of these, you know, terrible allegations that Section 3 does. So I just want to play that out. So they would run, they would run, potentially get elected, and then when they would go to serve, Congress would say, you are not qualified to be a member. That's correct. Because you're arguing that states cannot add qualifications to congressional candidate-seeking office. That's correct. So that you're stuck with what the Constitution provides, you can't be jerry-rigging these things, and that is a consequence. Now, states try to protect themselves, obviously, from candidates that aren't qualified because they want to be represented. That doesn't make it constitutional. I mean, it's understandable that they would try to protect themselves from somebody who cannot serve. However, it doesn't make it legal under the Constitution. So the state is adding a qualification that they're adding. We are not arguing that the state has added a qualification. We have not argued that. I thought you just said, I thought that's just what you said. Oh, you were answering my question. I was answering your question, yes. The qualifications are in the Constitution. The state has not added one. And under the Constitution, it's Congress's. In the state, it's in the state Constitution, the Georgia Constitution. It doesn't matter that's state law. Well, my question is, what is the qualification that the state of Georgia is adding that they should not be adding that she's entitled to run for Congress? What's the qualification? They have, so I don't know how to answer your question. The state hasn't added something. What they have done is frustrated the ability of Congress to judge the qualifications of its members by, and again, this is as applied to Section 3, not generally, but could occur in some other context. Okay. But they are frustrating that authority under Article 1, Section 5, by removing her from the ballot and so that she wouldn't, if they did, so that she would never present herself to Congress for them to. Well, then this leads me to my next question, which is why should we not wait or hold this case in abeyance until the Georgia Supreme Court rules, assuming that the other side even appeals? Because my understanding is there isn't an appeal currently pending. There was an appeal pending until yesterday. Oh, yesterday. And they filed a mandatory appeal in the Supreme Court. The Supreme Court dismissed the mandatory appeal. They do agree you appeal to them, but it's mandatory. Instead, it's discretionary, and they have 30 days from the. And that's August 25th. I mean, they've been very litigious so far. So why shouldn't we hold it in abeyance until we see what happens? And if they do appeal, what the Georgia Supreme Court does? Well. I mean, isn't that sort of an important piece for us to look at? But the problem is, if the Georgia Supreme Court decides that she's to be removed from the ballot, I mean, we're going to have irreparable harm just like that. But we're going to have some, a candidate for office removed from the ballot. Yeah, then the case would not be moved. But if she prevails in the Georgia Supreme Court. It is not moved because she's still subject to the challenge procedure that we have challenged constitutionally that could be applied to her any time she's a candidate. Even though it's been determined that she did not participate in the insurrection. I'm not saying that they could stay in claim under Section 3 again. I am saying she is subject to a challenge of her qualifications. And that are several. And the state of Georgia cannot decide that she's unqualified to run for office. Only Congress can make that determination. You're challenging the procedure under which that challenge is litigated. All right. I think we have your argument, counsel. Thank you, Your Honor. All right. And we'll hear from Ms. McGowan. Thank you, Your Honor. May it please the Court, I am Charlene McGowan on behalf of the state parties, the Secretary of State, and Judge Boudreaux. I think the Court has identified the mootness problem in this case. And that is that the state challenge proceeding that Green asked the District Court to enjoin in her motion that's at issue in this appeal, that proceeding has already happened. And it cannot be undone at this point. And Green won that challenge, as this Court correctly notes. But it's still going on. We don't have a final resolution yet. That decision of the ALJ that was affirmed by the Secretary of the State has gone through the Fulton County Superior Court. And now, more likely than not, it's going to be progressing to the Georgia Supreme Court. That is correct, Your Honor. But we would contend that the case is still moot. We do have a final decision of the Secretary that has been affirmed on judicial review. As it stands right now today, Representative Green is on the November general election. But that could change quickly. It could, Your Honor. And this Court does recognize an exception to the mootness doctrine, where a case is capable of repetition and yet evades review. But that exception does not apply here for a number of reasons. It's a very narrow exception. It only applies in the limited circumstance where there is a reasonable expectation that the same complaining party will be subject to the same action again and where the action would evade review. And so even if the Court considers an ongoing appeal as capable of repetition, it also has to evade review. And Representative Green does have review if this case does go up to the Georgia Supreme Court. If by some chance the Court would reverse it under the very limited, any evidence standard, Representative Green also can petition the U.S. Supreme Court for cert where she can raise her constitutional arguments there. She can raise her constitutional defenses in front of the Georgia Supreme Court and they can... Here's the problem I'm struggling with. We still have a judicial proceeding that could cause Representative Green significant harm and potentially very close to an election. And I appreciate your saying, oh, well, she would have other avenues. She could go up to the Georgia Supreme Court. But the closer we get to an election, the more difficult it would be for her to change anything if the Georgia Supreme Court rules against her. I don't understand how in the world this is moot. Your Honor, because the case still does not evade review, and that is a necessary component in order for this Court to find that that exception to the mootness doctrine applies. As this Court has said in the Hall v. Alabama case, that even a likely recurrence is insufficient if there would be ample opportunity for review at that time. So it's not that Representative Green would lose every opportunity to raise the constitutional claims that she has raised in the federal action. She can still make those arguments to the Georgia Supreme Court. They have co-extensive jurisdiction to consider federal constitutional claims. They can rule on those issues, as can the U.S. Supreme Court, if the remote possibility happens that the case ends up up there on the list. But again, why shouldn't we just hold this case in abeyance until we see what the Georgia Supreme Court does? Because I think it's an important piece of the puzzle. I agree, Your Honor, and the State would be fine with that. But then you would agree that it's not moot. If we're holding it in abeyance, it's not moot. I think our primary argument is that this appeal is moot and should be dismissed. We don't hold cases in abeyance if they're moot. Well, alternatively, the State would accept that. What is important to the State is that the challenge proceeding be allowed to proceed to a final resolution as swiftly as possible. These challenge proceedings are designed under State law to move quickly. So we would like to see a final resolution happen at the State level, and if the Court wants to hold it in abeyance in order to allow that to happen. What is critical to the State is that that process not be allowed to proceed because, as this Court has noted, the election is swiftly approaching. We're less than three months from now. When does early voting start? Early voting will start in October, and I'll also advise the Court that tomorrow is actually the deadline for ballots to be finalized because they will have to be approved and printed, and then they will start getting mailed in September, at least the absentee mail. So absentee ballots start getting mailed in September? Correct, Your Honor. And they also must go out to overseas and military voters 45 days before the election. That's when they start going out as well as when... Do you have the exact date before you, or do you not? I apologize, Your Honor. I do not. I think it is sometime in mid-September. So... 45 days before the general election date. So Representative Green is appealing the denial of a motion for a preliminary injunction. Correct. So does she also have to establish a substantial likelihood of success on the merits and irreparable harm? As well as irreparable harm. And as we have noted in our brief, we think the Court, if you do decide to reach the merits of the appeal, we think we win on irreparable harm alone because she cannot show any irreparable harm. She has not been disqualified. She is on the ballot and is likely to stay on the ballot. And because she cannot show irreparable harm, that is reason enough to affirm the District Court's denial of her preliminary injunction motion. So here's... Let me turn to the 14th Amendment, Section 3. Would you agree that Section 3 is not a bar to being a candidate or standing for election, but rather a bar to taking office? Yes, I do agree. So is the State, in considering a challenge to her qualification to hold office under 21... I'm sorry, I don't have the statutory number. Is the State's role under this statutory challenge to enforce an existing constitutional qualification for office? I'm going to try to answer your question. We agree that Section 3 bars office holding, but the State has a well-established interest in regulating ballot access and making sure that only those candidates who are qualified to hold office and can take that seat are placed on the ballot. So we look at this as more of a ballot access regulation than trying to usurp Congress's authority. We absolutely agree that Congress can refuse to seat a member once Congress goes into session, and that they can remove a sitting member of Congress. The State is not trying to take that authority from Congress, their authority under Article 1, Section 5. But the State has the authority under Article 1, Section 4 to regulate the time, place, and manner of elections. And that includes regulating ballot access and making sure that only candidates who can take office once they are elected are placed on the ballot. If a candidate does not meet the constitutional qualifications for office and Congress declines to seat them, the State has to go to the expense of holding a brand new election. And so it's important that the qualifications be determined at the outset, and the State has a well-established interest. Here's my problem with that, though. Under Section 3, Congress can remove the disability. If the challengers here were able to get Ms. Green excluded from the ballot, how has that not usurped Congress's ability to remove any disability that it may decide she suffers from? Well, as Your Honor has noted, there has been no finding that she engaged in insurrection. I'm asking you to assume. Let's assume that the challengers succeed at the Supreme Court and the Secretary of State says, pretend there's no timing issue on printing ballots. So she's not on the ballot. How has the State of Georgia not usurped Congress's role under Section 3 of Article 14? Because now she's not on the ballot, in my hypothetical, and Congress doesn't have the opportunity to determine whether to remove the disability. I think Congress could remove that disability and she could run for office in the future, but I think the State of Georgia has a right to determine before an election is held whether or not, as of the time of the election, the candidate has the constitutional qualifications for office. Isn't the answer that Congress can remove the disability if she's elected, but she's got to get elected first? Absolutely, yes. But she can't get elected if, under my hypothetical, you have, the State has removed her from the ballot. I think that would be the case, Your Honor. But again, we're talking about a facial challenge to Georgia's challenge procedures, and she has to show, in order for that to succeed, that there is no circumstances under which the challenge statute could be applied constitutionally. And under this Congress's ground, the State has an interest, if not a duty, to make sure that candidates have the qualifications for office. But under the United States Constitution, what do you think are the qualifications for a member of Congress? Those qualifications are listed in Article I. They have to be at least 25 years of age, a citizen of the state, as well as having been a United States citizen for at least seven years. For seven years, right. I would say that. And that's it. There's nothing else, correct? Well, I do think that Section 3 of the 14th Amendment does add another qualification. But you just conceded to Judge Branch that that's not a qualification beforehand. That's a bar to taking office. It is. But it's something, it's a qualification. But it's either at the beginning or at the end, and you just conceded it's at the end. And let me clarify my position. We do agree that Congress can enforce Section 3 and refuse to seat a member of Congress once they are elected. But the state also has the ability through its right to regulate ballot access to not put the name of a candidate on a ballot if they would eventually be disqualified from holding office under Section 3 of the 14th Amendment. You're taking the position that the state can judge the qualifications for those congressional candidates sitting on a ballot, correct? How does that not fly in the face of Article 1, Section 5, that says each house shall be a judge of the election returns and qualifications of its own members? The language of Section 5 explains that Congress can regulate its own members. And in order to be a member, you have to have been elected. And so we believe that the powers to the state and Congress under Sections 4 and 5 are coextensive and complementary. They do not contradict. Congress can regulate its members. The state can regulate candidates and which name of a candidate can be placed on a ballot. And the right of the state to regulate ballot access has long been recognized by the U.S. Supreme Court. We are not obligated to put unqualified candidates on the ballot and people who may not eventually be able to take office. I think you're underscoring my point that both in Article 1, Section 5 and the 14th Amendment, Section 3, the state is trying to regulate qualifications, whereas the Constitution is providing for, after the election, the qualifications of the House. And the state, if the state were to take steps to keep her off the ballot, it is running headlong into these two constitutional provisions that deal with a qualification to actually take office, not to be on the ballot. So I still think it's the state's right in order to make those determinations prior to an election. You could have a scenario where the citizenship of someone is in question, but the state still has the right and the opportunity to keep that candidate off the ballot. If Congress eventually determines that they're not qualified, yes, they can remove that person or refuse to seat them, but the state should have the opportunity at the outset and has a well-recognized constitutional right and the authority under Article 1, Section 4 to ensure that only candidates who meet the constitutional qualifications for office are placed on the ballot. And I will reserve the rest of my time for the intervenors. All right. Mr. Sells? Thank you, Judge Wilson, and may it please the Court. On behalf of the both intervenors, we ask the Court to find that the District Court did not abuse its discretion in denying the preliminary injunction. This Court should therefore affirm the denial and remand the case for further proceedings. I'd like to try to make three points based on the questioning that I've heard so far this morning. The first point I want to address is the mootness question. Our position is that this case is not moot. We actually agree with Representative Green here that there is still a live controversy, and to the extent that this extends past the election, then it would fall under the exception to the mootness doctrine of being capable of repetition, yet evading review, based on Representative Green's assertion in her reply brief that she's likely to run again. It's also quite possible that she could face this exact same challenge in two years. I know, Judge Wilson, you asked, well, how could she be challenged again? And I think the answer is that my clients wouldn't be able to challenge her in two years if they ultimately lose in the State Court, but others of her constituents probably could. Be challenged again because it is alleged by your clients that she participated in the insurrection? Well, I can easily envision a scenario where the January 6th Commission unearths more information about Representative Green's involvement in January 6th and some others of her constituents could make that challenge in the future, yes. I want to move on to my second point, unless there are further questions about mootness. My second point is that two of Representative Green's claims are a bit in tension, and I think, Judge Wilson, you hit on this. Her Article I, Section 5 claim is in tension with her claim that we don't know yet whether she will be disqualified on January 3rd. Because we don't know until January 3rd whether she will be disqualified, that means that Congress has the freedom to judge her qualifications. So, to your point, Judge Branch, Congress, under the Radebush case, one doesn't violate Article I, Section 5 if Congress retains that freedom to choose after the state processes. So, her claim that we don't know yet suggests very strongly that Congress does still have that ability. But in response to one of your questions, Judge Lagoa, do we have to wait and see? How can we know? I think the answer to that is no. And I'll give you two hypotheticals. Suppose, for example, Congress next week were to hold a hearing on January 6th and determine that Representative Green participated and engaged in insurrection and is therefore disqualified under Section 3. Would Georgia still be forced to put her on the ballot under those circumstances? The answer is clearly no, even though Congress could change its mind between now and January 3rd. Another hypothetical. Vladimir Putin wants to run for Congress in Georgia. Well, he's not a citizen. Clearly doesn't meet the qualifications. But Congress has the ability to grant retroactive citizenship. So, if Vladimir Putin wants to run for Congress this year, we don't know if Congress is going to grant him a seat on January 3rd. The Constitution doesn't require the state of Georgia to take a wait-and-see approach to access to its ballot. And that brings me to my third point, which is that this case really asked the court to balance two important constitutional provisions Ms. McGowan mentioned. One is the Elections Clause and the other is Article I, Section 5. And I want to ask the court to take maybe a 10,000-foot view of that, that balancing, right? Because if the court comes down on Rep. Greene's side of the case and finds that the state does not have the power to regulate its ballot when it comes to the constitutional qualifications for members of Congress, that undermines the state power to regulate ballot access across the board because its Elections Clause power is diminished. We would argue that the better way to approach this case is simply to, as Ms. McGowan said, put yourself in the shoes of the state. Candidates are planning for a place on the ballot and it's reasonable for the state to make an initial determination as of the moment they're seeking ballot access whether they're qualified to hold the office. That could change in the case of Rep. Greene. Congress could change its mind down the road, but it's reasonable. It is a reasonable exercise of the state's power under the Elections Clause to have 21-2-5 so that constituents like my clients can raise a legitimate challenge to Rep. Greene's qualifications to hold the office. You indicated that the state's exercise of this right does not conflict with Congress's right under Article I, Section 5. But if the state removes Ms. Greene from the ballot, how does the House have any role anymore on judging the qualifications of Ms. Greene? So let's walk through it. Imagine the Georgia Supreme Court reverses and decides a week before the election that Rep. Greene is disqualified. What would happen? Under Georgia law, the votes that were cast for her would not be counted. It would be too late at that point to remove her, but Georgia law provides that votes cast for a disqualified candidate aren't counted. Georgia would then certify one of her opponents as a winner, although I don't know if she has a winner. So let's assume that she has an opponent and that opponent is certified as the winner. That opponent then presents him or herself to Congress on January 3rd, and Congress can say, no, you're not the winner because Rep. Greene was improperly disqualified, in our view. Georgia, you have to go back and do it again. I think under those circumstances— Why would Georgia have to go back and do it again when they just vote? They don't. Yes, they could at that point if votes were cast for Rep. Greene. They could rely on those votes. But you understand there's an election problem there. If the Georgia Supreme Court has said she has to be taken off the ballot, either that decision comes down before ballots are printed, so she's not even on the ballot, or if it comes down after the ballots are printed, it's certainly going to diminish a potential vote count, that ruling that she is disqualified from the ballot. But I don't think, under the Rutabish case, that that usurps Congress's power to make a judgment for itself. As you've both identified, it can either count the votes or send it back to Georgia to do over. It's certainly free to do that. Those are the three points I wanted to make, unless there are any other questions, I'll sit back. All right, thank you. Mr. Bott, you deserve some time for rebuttal. Thank you very much. And let me address holding the case in abeyance. If you are convinced that the case is not mooted, if you are convinced that there is no legal claim under Section 3 for whatever reason, or if you are convinced that the procedure was unconstitutional and therefore she cannot be removed from the ballot through that procedure, why would you wait? Because we've already been talking now about what's going to happen. If a decision of the Georgia Supreme Court says she's not qualified, we already have people voting absentee. We may have people voting in person when that decision comes down. And what's going to happen to her vote? The right to vote is going to be vitiated by that decision. And there's no unringing that bell. Your decision, you know, a week later, no, you know, that can't happen because the procedure is unconstitutional or no, that can't happen because the Georgia Supreme Court didn't consider any of our counterclaims, including the claim on whether or not, you know, Section 3, you could ascertain now whether she's eligible to take office. Then you can't do that under Section 3 until the time arises. So the state of Georgia has no authority to determine the qualifications of an individual to run for the United States Congress? Under the, as I've said repeatedly, under the United States Constitution, that is the case. Now, we are only asking for an as-applied chance with respect to Section 3, not the other ones. The other ones are much more reasonable and they are readily ascertainable as well. So the heart is not there in the same way, but I can't help with the way they wrote the Constitution. That would be a momentous decision on our part, which would apply. No state, no state in America has the authority to determine the qualifications of a candidate to run for the United States Congress. It's a novel question. The only time it came up in the Radebush case, that involved a recount of a general election. And they said that that recount was fine because it didn't interfere of a general election where Radebush and Harkey were both candidates. That recount did not interfere with Congress's ability to decide whether or not the recount came to the right result. But if you remove somebody beforehand so that they are not on the ballot for the general election, there's no way they're ever presented to Congress. It's a different situation. Now, this is irreparable harm. They've already conceded such an adverse decision would result in lost votes. That's irreparable. And, you know, if in a competitive race, it could be decisive. And if there are procedural things that are triggered, for instance, the person is removed from the in-person early voting ballot. So when somebody comes into the precinct to vote early, they look for the person they want to vote for, Marjorie Taylor Greene, and she's not there. So how do you unring that bill? I mean, if you wait until then, you risk the very irreparable harm that a preliminary injunction is sought to protect someone from. So I don't see any decision of the Georgia Supreme Court that will make the case move, that doesn't raise the legal questions of using Section 3, or for that matter, the 1872 Amnesty Act, or with the constitutionality of the procedures. What would they say unless they address them and they're refusing to? The state says no counterclaims. The trial court said, because of my decision, which was all about the factual merit of the article of the Section 3 claim, as if it was legally valid to make, it was only about the facts. So there's going to be no decision, apparently, there has been so far no decision on our counterclaims that present the claims that are made here. So they're not being litigated there, despite our best efforts to have that accomplished. So they are not related, really, to each other other than in the broadest sense, and certainly not in the sense that the constitutional and federal claims that we are litigating here are being litigated there. They are not. Thank you, Your Honor. Thank you. Thank you, Judge. Thank you, counsel. In the next case.